IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| KAREN KAY FOX,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No. 1:10-CV-00054-TS-EJF<br>District Judge Ted Stewart<br>Magistrate Judge Evelyn J. Furse |

    Plaintiff Karen Kay Fox ("Ms. Fox") asks the court to reverse the Social Security Administration's final agency decision denying her application for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act. The Administrative Law Judge ("ALJ") found that Ms. Fox did not qualify for DIB because she was not "under a disability within the meaning of the Social Security Act since December 31, 2007, the date the application was filed and the amended alleged onset date." (Doc. 11, the certified copy of the transcript of the entire record of the administrative proceedings relating to Ms. Fox (hereinafter "Tr. __") 10).

    The Court has carefully considered the parties' memoranda and the complete record in this matter and recommends the District Court AFFIRM the ALJ's decision.

## FACTUAL AND PROCEDURAL HISTORY

    Ms. Fox was born on April 30, 1957. (Pl.'s Br. 4). In October 2002, she was in a car accident that injured her lower back, shoulders, right hip, left leg, left foot, and jaw. (Pl.'s Br. 4). Ms. Fox has fibromyalgia, back pain, diabetes, peripheral neuropathy, anxiety, and major depression. (Tr. 12). She also suffers from eczema and hypertension. (Tr. 12). On December 31, 2007, Ms. Fox applied for DIB, alleging disability beginning October 4, 2002. (Pl.'s Br. 3).

1

The Social Security Administration initially denied Ms. Fox's claim on May 13, 2008, and denied it upon reconsideration on October 2, 2008. (Pl.'s Br. 3). Ms. Fox filed a written request for hearing, which the ALJ granted, hearing the case on December 1, 2009. (Pl.'s Br. 3–4).

At the administrative hearing, Ms. Fox amended her onset date to December 31, 2007, the date she protectively filed her application for DIB. (Tr. 34). She testified she has not worked since that date and that her medical conditions cause her substantial pain, such as constant dull ache (Tr. 36), sharp back pain (Tr. 37), numbness and tingling in her feet and hands (Tr. 43–46), and various side effects from several medications. Ms. Fox argued that these symptoms, in addition to her medically-diagnosed conditions, qualified her for DIB. (Tr. 35).

On December 18, 2009, the ALJ denied Ms. Fox's claim. (Tr. 7, 10.) The ALJ held that despite having several "severe" and other impairments, (Tr. 12), Ms. Fox did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 13.) Additionally, the ALJ found that jobs existed in significant numbers in the national economy that Ms. Fox could perform. (Tr. 25.) The Appeals Council denied Ms. Fox's request for review on February 26, 2010. (Tr. 1). Ms. Fox then appealed to this court. She filed her opening brief on October 6, 2011. (Pl.'s Br. 18.) The Commissioner filed his response on December 5, 2011. (Doc. 25, Defendant's Answer Brief (hereinafter "Response"), at 20). Ms. Fox did not file a reply.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C.

§ 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The standard "requires more than a scintilla, but less than a preponderance." *Id.* "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted). *See also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) ("A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.") (internal quotation marks and citations omitted).

In conducting its review, the court "must examine the record closely to determine whether substantial evidence supports" the Commissioner's decision. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax,* 489 F.3d at 1084 (internal quotation marks and citations omitted). However, the court is not required to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."

*Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

Besides the lack of substantial evidence, reversal may also be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## FIVE-STEP DISABILITY DETERMINATION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2010). Further, an individual is considered disabled "only if [his] physical or mental impairment or impairments are of such severity that he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520 (2012). Step one of the evaluation process provides that a claimant who is employed is not disabled, regardless of that person's medical condition, age, education and work experience, if the work constitutes "substantial gainful activity." *Id.* § 404.1520(b); *accord Lax*, 489 F.3d at 1084. If the claimant does not engage in substantial gainful activity, then the decision maker must proceed to step two

to determine whether the claimant has an impairment or combination of impairments severe enough to limit his or her ability to do basic work activities. *See id.* § 404.1520(c). This determination is based on medical factors alone. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

A finding of a severe impairment leads the decision maker to step three to determine whether the claimant's impairment meets the durational requirement and is listed in Appendix 1 of Subpart P, 20 C.F.R. § 404, or is equal to a listed impairment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment, or the equivalent thereof, is listed, the claimant is presumed to be disabled. *See id.* § 404.1520(d). If the impairment is not listed, the decision maker proceeds to step four.

Before considering step four, the decision maker must first determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *See* 20 C.F.R. § 404.1545(a). In making this finding, the decision maker considers all of the claimant's medically determinable impairments, including those which are not "severe." *See* 20 C.F.R. § 404.1545(b).

At step four, the decision maker uses the RFC to determine if the claimant has the ability to perform his or her past relevant work. *See id.* § 404.1520(e),(f). If the claimant is able to perform work he or she has done in the past, he or she is not disabled. *Id*.

If the claimant can perform past relevant work, the final step is to use the RFC to determine whether the claimant has the ability to perform any work available in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, where the claimant's impairment is so severe that it precludes him or her from performing work

he or she has done in the past, he or she is deemed disabled unless the Commissioner can establish that "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Williams*, 844 F.2d at 751 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(g).

## ANALYSIS

In this case, the ALJ made the following findings of fact and conclusions of law, applying the five-step sequential evaluation to Ms. Fox:

1. "[Ms. Fox] has not engaged in substantial gainful activity since December 31, 2007, the application date." (Tr. 12).
2. "[Ms. Fox] has the following severe impairments: fibromyalgia, back pain, diabetes, peripheral neuropathy, anxiety and major depression." (Tr. 12).
3. "[Ms. Fox] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1." (Tr. 13). Further, "since the alleged onset date [Ms. Fox] has had the residual functional capacity to perform . . . a limited range of light, unskilled [work.]" (Tr. 16).
4. "[Ms. Fox] is unable to perform any past relevant work." (Tr. 24).
5. "Considering [Ms. Fox]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Ms. Fox] can perform." (Tr. 25).

In short, the ALJ found that Ms. Fox was not "disabled" as defined by the Social Security Act. (Tr. 26).

Ms. Fox argues that the ALJ's determination was not supported by substantial evidence and argues that the ALJ failed to follow proper legal standards. (Pl.'s Br. 1). Specifically, she argues that the ALJ failed to properly evaluate the opinion evidence, (Pl.'s Br. 6, 15), improperly determined that Ms. Fox did not meet a listing at Step 3 of the Five-Step Disability Determination Sequence, (Pl.'s Br. 11), improperly determined Ms. Fox's RFC, (Pl.'s Br. 10), and erred in evaluating Ms. Fox's credibility. (Pl.'s Br. 17). The Court addresses each argument in turn.

## I. Evaluation of Medical Opinion Evidence

Plaintiff argues that the ALJ failed to evaluate the medical opinion evidence properly. (Pl.'s Br. 6). She argues that the ALJ erred in giving little weight to the opinions of Dr. Kevin Duke, DO, Plaintiff's treating physician, while giving moderate weight to the opinions of Drs. Rox Burkett, Kenneth Wells, and John Hardy, the "non-examining and non-treating medical sources who did not have the opportunity to examine the Claimant, hear the claimant's testimony, or the opportunity to review the entire medical record." (Pl.'s Br. 6). According to Ms. Fox, the weights given the different testimony constituted error because the "opinion of a treating physician is entitled to great weight, and the Commissioner must provide 'specific, legitimate reasons' for rejecting a physician's opinion." (Pl.'s Br. 6).

In evaluating the medical opinion evidence, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The first step is to determine if the physician's opinion is to be given "controlling weight." *Id.* This step requires the ALJ to make a clear finding as to whether he or she gives a physician's opinion controlling weight or not. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ determines that a physician's opinion does not merit controlling weight, the second step requires the ALJ to state how much weight he or she gives the opinion, using the factors provided in the regulations.[1] *Krauser*, 638 F.3d at 1330–31. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors," *Watkins*, 350 F.3d at 1300, but the ALJ does not have to discuss all the factors for

---

[1] The six factors provided in 20 C.F.R. §§ 404.1527, 416.927 are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

each of the medical opinions before him or her explicitly. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ's analysis at the second step need only be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight." *Id.* at 1300.

Here, the ALJ appropriately followed this two-step inquiry. He made a clear statement as to the weight given to each physician's opinion and made the basis for his assignment of weight to each opinion sufficiently clear. Contrary to Ms. Fox's assertion, the ALJ did not *reject* Dr. Duke's opinion. Rather, he gave Dr. Duke's opinions "little weight" because, among other things, Dr. Duke's fibromyalgia diagnosis did not comport with the guidelines set forth by the American College of Rheumatologists, as required by Social Security Ruling 99-02p. (Tr. 21). The ALJ also noted that Dr. Duke's opinions were "inconsistent with other opinions in the record." (Tr. 21). The ALJ did, however, agree with Dr. Duke's conclusion that Ms. Fox has fibromyalgia, diabetes, and back pain. He simply disagreed with Dr. Duke's conclusion of total disability. (Tr. 12, 18, 21). Likewise, he gave "little weight to Dr. Burkett's first opinion because it was offered before the claimant's medical file was complete." (Tr. 23). He gave "moderate weight to Dr. Burkett's second opinion because it was offered upon a review of all of the medical evidence in the record and it is consistent with the above-stated residual functional capacity." (Tr. 23).

The ALJ did not give "controlling weight" to the opinions of non-examining and non-treating medical sources, as Ms. Fox suggests. (Pl.'s Br. 8). "Moderate weight" was also given to the opinions of Drs. Wells[2] and Hardy because the ALJ recognized them as "expert[s] who are familiar with Agency standards," and because their opinions were consistent with Ms. Fox's RFC. (Tr. 24).

---

[2] Plaintiff incorrectly identifies Dr. Kenneth Wells in her brief as "Dr. Kenneth Wallis." (*See, e.g.*, Pl.'s Br. 6).

Thus, the ALJ did not give "bare conclusions" (Pl.'s Br. 7), but rather made a clear finding as to whether he was giving a physician's opinion controlling weight or not, and explained why Dr. Duke's opinion received lesser weight than the other opinions on record. *See Watkins*, 350 F.3d at 1300. Furthermore, he provided "specific, legitimate reasons" for giving more weight to other medical opinions in the record. As a result, the ALJ properly evaluated the opinion evidence. The Court declines Ms. Fox's request to reweigh the evidence presented to the agency and will not "substitute [its] judgment for the Commissioner's." *Lax,* 489 F.3d at 1084 (internal quotation marks and citations omitted).

Ms. Fox also argues that the ALJ "erred in rejecting the opinions of Ms. Lacy and Mr. Synder regarding the severity of plaintiff's impairment and their functional effects." (Tr. 17). While she recognizes that Ms. Lacy's and Mr. Snyder's opinions are "other source" opinions that are not "acceptable medical source[s,]" and therefore "cannot be used to establish the existence of a medically determinable impairment," she argues nevertheless that the ALJ should not have discounted their opinions. (Pl.'s Br. 16–17.) This argument lacks persuasive force.

Ms. Fox correctly notes that "other source" opinions do not constitute "acceptable medical sources." (Pl.'s Br. 16–17). However, such sources "are important and should be evaluated on key issues such as impairment severity and functional effects." Social Security Ruling 06-03p. The ALJ recognized this value. (*See* Tr. 21 (noting that "all relevant evidence in the case record [should] be considered, even if not from an acceptable medical source.") (quoting Social Security Ruling 06-03p)). However, the requirement to evaluate an opinion does not require one to assign that opinion a great amount of weight automatically. Although Ms. Fox disagrees with the ALJ's decision not to give Mr. Synder's and Ms. Lacy's opinions controlling weight, she fails to point out how the ALJ failed to *evaluate* Mr. Synder's and Ms. Lacy's

opinions. The ALJ evaluated these opinions, concluding they constituted "other source" opinions "entitled to less weight than that accorded to the opinions of 'acceptable medical sources.'" (*See* Tr. 21). Therefore, the ALJ did not err in assigning those opinions lesser weight than the other medical opinions in the record.

Because the ALJ appropriately followed the two-step inquiry for the medical opinion evidence, and appropriately evaluated the "other source" evidence, the court upholds the ALJ's decision with respect to Ms. Fox's first argument.

## II. Step Three Determination

Next, Ms. Fox argues that the ALJ erred in finding that Ms. Fox did not meet a listing at step three. (Pl.'s Br. 11). She argues that substantial evidence does not support the ALJ's findings. (Pl.'s Br. 11).

"At step three, the ALJ determines whether the claimant's impairment 'is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity.'" *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If the ALJ finds the claimant does not meet a listed impairment, he must "discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Id.* The ALJ need not discuss every piece of evidence, but "[t]he record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10.

In *Clifton* (the case on which Ms. Fox relies), the court explained that it reversed and remanded the ALJ's decision because "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or

equal any Listed Impairment." *Id.* at 1009.  The court said that this type of "bare conclusion" [was] beyond meaningful judicial review." *Id.*

Here, the ALJ's analysis constitutes more than a "bare conclusion" like the ALJ's conclusion in *Clifton*.  Rather, the ALJ's decision here discusses at length the three pertinent Listings—9.08,[3] 12.04, and 12.06—substantially citing the requirements under each, and discussing and explaining why he found Ms. Fox's impairments did not meet those requirements. (*See* Tr. 13–16).  Ms. Fox argues that the ALJ drew erroneous conclusions that did not comport with all of the medical opinion evidence in the record.  (Pl.'s Br. 12–15.)  She argues that the "ALJ is merely trying to cherry pick the evidence to support his own conclusion."  (Pl.'s Br. 15.) However, the Court notes that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or *no* contrary medical evidence." *Trimiar*, 966 F.2d at 1329 (emphasis added, internal quotation marks and citations omitted).

The ALJ must decide which evidence, among all the conflicting evidence, is most persuasive and decide accordingly.  The ALJ cannot possibly accept as true each and every piece of opinion evidence presented.  The ALJ must determine which evidence is most convincing and decide the case.  The ALJ has done exactly that in this case.  He found that Ms. Fox did not meet the requirements of Listing 9.08 because she did not have "all of the requisite type and severity of symptoms."  (Tr. 13).  He found that Ms. Fox did not meet the requirements of Listing 12.04 and 12.06 because she had merely a mild restriction.  (Tr. 14-15).  He found that Ms. Fox still could conduct a number of household activities and a number of social activities.  (Tr. 15). Further, the ALJ specifically found that "no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meet or equal the criteria of any

---

[3] Although Medical Listing 9.08 was repealed on June 7, 2011, *see* 76 Fed. Reg. at 19692 (Apr. 8, 2011), the court reviews the ALJ's decision according to the rules in effect at the time the decision was issued.

listed impairment." (Tr. 13). Thus, despite the fact that some of the opinion evidence showed otherwise, one cannot say that the ALJ's decision did not "consider[] all of the evidence," *Clifton*, 79 F.3d at 1009–10, or is "overwhelmed by other evidence," *see Gossett*, 862 F.2d at 805. Here, the ALJ simply had to choose between two alternatives, and the ALJ chose what he viewed as the more credible alternative and explained why he concluded as such. (*See* Tr. 13–16). A reasonable mind could surely accept the evidence the ALJ relied on "as adequate to support [his] conclusion." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). Therefore, substantial evidence supported the ALJ's decision that Ms. Fox did not meet a listing at step three

### III. RFC Determination

The ALJ held that Ms. Fox had the RFC "to perform the full range of light unskilled work," but with several limitations. (*See* Tr. 16). Ms. Fox argues that the ALJ's determination failed to base the RFC assessment on all relevant evidence in the record and consider the limiting effects of all impairments, including "non-severe" impairments. (*See* Pl.'s Br. 11).

The ALJ uses the RFC to determine whether the claimant is able to perform either past work (step four), or any work at all in the national economy (step five). 20 C.F.R. § 404.1545(a)(5). When assessing RFC, the ALJ must "consider all . . . medically determinable impairments of which [they] are aware, including . . . medically determinable impairments that are not 'severe.'" *Id.* § 404.1545(a)(2). The ALJ must also consider all of the nonmedical evidence in the record. *Id.* § 404.1545(e). Part of this assessment includes considering whether the claimant's "impairment or combination of impairments prevents [her] from performing" work. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (alteration in original).

In *Flaherty*, the plaintiff made the same argument as Plaintiff here; namely, that the ALJ failed to consider the combined impact of all her impairments. *Id.* She argued that the ALJ did not give enough weight to one of her conditions when denying her DIB. *Id.* The Tenth Circuit, in rejecting this argument, noted that the "ALJ stated that he considered all of her symptoms in assessing her RFC." *Id.* The Court then noted: "[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Id.* "Furthermore, the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of Ms. Flaherty's impairments." *Id.*

Here, the ALJ likewise stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence[.]" (Tr. 17). The ALJ's decision explicitly refers to Ms. Fox's non-severe impairments of eczema and hypertension (Tr. 12) and explains that the ALJ considered all of Ms. Fox's medical conditions "singly and in combination." (*See, e.g.*, Tr. 14). In fact, as noted above, the ALJ explicitly held that "[Ms. Fox] does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments . . . ." (Tr. 16). Thus, the ALJ appropriately considered the combined impact of all of Ms. Fox's impairments when determining Ms. Fox's RFC.

### IV. Credibility Determination

Finally, Ms. Fox argues that the ALJ improperly evaluated Ms. Fox's credibility. (Pl.'s Br. 17). She argues that the ALJ "failed to discuss the specifics of Plaintiff's testimony, much less provide specific reasons for rejecting this testimony as required." (Pl.'s Br. 17).

When evaluating credibility, the ALJ must follow the prescribed two-step process: (1) evaluate whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and then (2) evaluate

13

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (discussing factors to evaluate credibility). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). While the ALJ must cite specific evidence used in evaluating a claimant's subjective complaints and explain why if he concludes those complaints are not credible, *see id.*, this process "does not require a formalistic factor-by-factor recitation of the evidence," *Qualls*, 206 F.3d at 1372. "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the procedural requisites] are satisfied." *Id.*

In this case, the ALJ applied the two-step process. (Tr. 17). Finding the first step satisfied, the ALJ moved to the second step. (Tr. 17). In the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17). The ALJ noted that Ms. Fox's testimony with regard to pain and other symptoms was not credible because she could regularly complete household chores, "she plays with her grandson; she shops for groceries; she goes out to eat; she drives a car; she cooks meals and she cares for her mentally handicapped son, driving him to work and to his Special Olympics games." (Tr. 19). The ALJ also observed that Ms. Fox was planning a vacation in the near future. (Tr. 19). Further, the ALJ observed Ms. Fox's capabilities the day of the hearing. (Tr. 17). For these reasons, the ALJ concluded that Ms. Fox's "activities of daily living and her vacations are entirely inconsistent with an individual who is alleging disability due to debilitating pain." (Tr. 19).

Thus, contrary to Ms. Fox's assertion that the ALJ "failed to discuss the specifics of Plaintiff's testimony, much less provide specific reasons for rejecting this testimony as required[,]" (Pl.'s Br. 17), the record demonstrates that the ALJ satisfied the procedural and substantive requirements in evaluating Ms. Fox's credibility.  As such, the Court upholds the ALJ's determination.

## **CONCLUSION**

The ALJ properly evaluated the opinion evidence, properly determined that Ms. Fox did not meet a listing at Step Three of the Five-Step Disability Determination Sequence, properly determined Ms. Fox's RFC, and appropriately evaluated Ms. Fox's credibility.  Therefore, the ALJ's decision applied the correct legal standards, is supported by substantial evidence, and should be upheld.

## **RECOMMENDATION**

Based on the above analysis, this Court RECOMMENDS that the District Court AFFIRM the Commissioner's decision.  Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b), within fourteen (14) days of receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 18th day of July, 2012.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge